J-A02009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: A.T.R., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.R., MOTHER | : : : : : : : | |
| | : | No. 1163 WDA 2024 |

Appeal from the Decree Entered August 15, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
63 in adoption 2024

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED: March 21, 2025**

A.R. (Mother) appeals from the August 15, 2024 decree that involuntarily terminated her parental rights to her son, A.T.R. (the Child), born in July of 2014.[1]  After careful review, we affirm.

The certified record reveals the following relevant facts and procedural history.  Mother was the subject of prior reports received by the Erie County Office of Children and Youth (OCY or the Agency) dating back to 2010.  The Agency first became involved with the Child upon his birth due to marijuana being found in his system.  The Child was removed from Mother's care and

---

[1] The Child's father is J.O.G., III (Father).  The orphans' court granted Father's petition to confirm his consent to voluntarily terminate his parental rights to the Child at a hearing on July 26, 2024.  Father did not appeal or otherwise participate in Mother's appeal.

adjudicated dependent in October of 2014. During that dependency case, Mother was provided services to address her substance abuse, mental health issues, and anger management concerns. *See* N.T., 8/15/2024, at 12-13.

A.R., the Child's older brother, was also adjudicated dependent at that time due to Mother's physical abuse of him. Related to this abuse, Mother was charged with endangering the welfare of children and simple assault, to which she pleaded guilty. *See* OCY Exhibit 11.

The Child's first dependency case was open for thirty months and was ultimately discharged in March of 2017, when the juvenile court awarded Permanent Legal Custodianship (PLC) to the Child's maternal grandparents. However, in December of 2022, the grandparents informally returned the Child to Mother. *See* N.T., 8/15/2024, at 13-14. As neither the grandparents nor Mother requested to discharge the PLC, it remained.

The orphans' court aptly summarized the subsequent factual history leading up to the initiation of the Child's second dependency case, which is supported by the certified record, as follows:

> [On January 3, 2023,] OCY received a General Protective Services report that the Child had taken a . . . vape pen to school and was smoking it during school. He also had brought a cellphone into school and was watching pornography on it. When school officials summoned Mother, she arrived at school appearing to be under the influence of alcohol. At that time, the Child was eight years old.[2]

---

[2] This report was validated. *See* OCY Exhibit 6, 6/27/2023, at 13.

On January 11, 2023, OCY opened a second case involving Mother and the Child.

The OCY plan was for Mother to address the following issues:

a) Mother's ongoing substance abuse issues;
b) The behavioral health issues of Mother and the Child . . .

OCY referred Mother to family services, specifically "functional family therapy." Mother refused to participate in this program. Mother told the OCY caseworker that it was [the Child and his brother] that needed to be placed because of their behavior.

Mother refused to engage in any drug and alcohol services, claiming she did not have a drinking problem and did not need help. She refused to submit to urine testing.

Orphans' Court Opinion, 10/1/2024, at 4-5.

The Agency attempted to provide Mother with services for six months, but she repeatedly declined. *See* N.T., 8/15/2024, at 15. During those six months, Mother requested that OCY remove the Child from her care several times. *See id.* at 16. On June 12, 2023, Mother telephoned the Agency to again request the Child's removal, and this time she threatened to leave him at the homeless shelter where they were residing. *See id.* at 16. The Agency subsequently obtained an emergency protective order for the Child. Several days later, OCY filed a dependency petition, and the juvenile court adjudicated the Child dependent on June 27, 2023, following a hearing. The court also terminated the maternal grandparents' PLC at the adjudicatory hearing.

The juvenile court initially established the Child's permanency goal as reunification. Ultimately, in January of 2024, the Child was placed with his current pre-adoptive kinship parent, A.T., who is Mother's cousin.

In furtherance of reunification, the court ordered Mother to, *inter alia*: (1) refrain from use of drugs and alcohol and submit to random urine testing; (2) complete a drug and alcohol assessment and follow all recommendations; (3) participate in a bonding and psychological assessment with Dr. Peter von Korff and follow all recommendations; (4) complete an anger management course; and (5) participate in supervised visitation with the Child.

With respect to Mother's substance abuse, she had prior diagnoses of substance abuse disorders for cocaine, alcohol, and marijuana. **See** N.T., 8/15/2024, at 18. Mother completed two drug and alcohol assessments, the second of which recommended outpatient treatment. **See id.** at 19; OCY Exhibit 6, 9/20/2023, at 22. Mother attended the recommended treatment from December of 2023, until approximately June of 2024, along with medication assisted treatment for her alcohol abuse *via* Vivitrol shots for four months. **See id.** at 22, 25-26, 29, 38; OCY Exhibit 6, 3/4/2024, at 21. Mother denied cocaine use, yet she tested positive for the drug twice: once in October of 2023, and again in July of 2024. **See id.** at 21-22, 29, 75. Mother also consistently tested positive for alcohol but refused to acknowledge her alcohol abuse. **See id.** at 19, 22, 24, 26, 28-29, 34, 38. In addition, Mother continually tested positive for marijuana. **See generally** OCY Exhibit 6; OCY Exhibit 8. While Mother had a valid marijuana prescription, the Agency was concerned that Mother was buying illegal marijuana "from the street," as opposed to a legal dispensary. **See** N.T., 8/15/2024, at 19, 43.

- 4 -

Regarding Mother's mental health and anger issues, she had prior mental health diagnoses of major depression, post-traumatic stress disorder (PTSD), and bipolar disorder. *See id.* at 18. Mother participated in the ordered psychological assessment in August and September of 2023, which included multiple recommendations for Mother, such as psychotherapy. *See id.* at 41-43; OCY Exhibit 9, at 3, 13. Mother engaged in mental health counseling beginning in February of 2024, through the time of the termination hearing. *See id.* at 29; OCY Exhibit 6, 3/4/2024, at 21-22. As for anger management, Mother engaged in a program for approximately six months but was unsuccessfully discharged. *See id.* at 27-28, 36; OCY Exhibit 6, 6/10/2024, at 16.

Mother repeatedly blamed the Child's dependency on his behaviors instead of her substance abuse and mental health issues. *See* N.T., 8/15/2024, at 58, 68, 70, 72-74. Mother maintained that the Child was dependent because he took a vape pen to school and other "behaviors." Mother claimed the Child learned these behaviors from spending time with other neighborhood children when he lived with his maternal grandparents. *See id.* at 72, 74.

With respect to supervised visitation, Mother attended only nine of the approximately forty visits that were offered. *See id.* at 44. According to Twanisha Franklin, OCY caseworker, Mother behaved inappropriately towards the Child at visits and attended a visit in February of 2024 while "high." *Id.*

at 23-24, 44, 60-62. In addition, the record reveals that Mother attended more than one visit where different caseworkers observed "a strong smell of marijuana on her." OCY Exhibit 6, 3/4/2024, at 18. Mother's visitation remained supervised for the entirety of the Child's dependency.

The juvenile court changed the Child's permanency goal from reunification to adoption following a hearing on June 11, 2024, and ordered that the Agency no longer needed to provide reunification services to Mother, including the supervised visitation. As such, OCY stopped providing all services to Mother.

On July 5, 2024, the Agency filed a petition to involuntarily terminate Mother's parental rights to the Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held an evidentiary hearing on the petition on August 15, 2024. The Child, then ten years old, was represented by Michele Alaskey, Esquire.[3] OCY presented the testimony of Ms. Franklin. Mother, who was represented by counsel, testified on her own behalf.

_____

[3] Our Supreme Court has mandated that appellate courts *sua sponte* "verify that the orphans' court indicated that the attorney [in a dual role of guardian *ad litem* (GAL) and legal counsel] could represent the child's best and legal interests without conflict." *In re Adoption of K.M.G.*, 240 A.3d 1218, 1236 (Pa. 2020); *see also* 23 Pa.C.S.A. § 2313(a). Counsel representing a child's legal interests must advocate for the child's preferred outcome even if counsel does not agree with it, whereas the GAL representing a child's best interests must express "what he or she believes is best for child's care, protection, safety, and wholesome physical and mental development, regardless of whether the child agrees." *In re T.S.*, 192 A.3d 1080, 1082 n.2 (Pa. 2017).

*(Footnote Continued Next Page)*

By decree dated and entered on August 15, 2024, the orphans' court involuntarily terminated Mother's parental rights to the Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on October 1, 2024.

On appeal, Mother presents the following issues for our review:

1. Did the [orphans' c]ourt abuse its discretion in terminating [] [Mother]'s parental rights when the record is comprised of insufficient competent evidence to establish grounds for termination, and when [Mother] had complied with [c]ourt[-]ordered services?

2. [D]id the [orphans' c]ourt abuse its discretion by finding that severance of [Mother]'s parental rights would serve the [C]hild's best interest?

Mother's Brief at 7 (unpaginated).[4, 5]

---

Our review of the record in this case reveals that the orphans' court appointed Attorney Alaskey, who was the Child's GAL in the dependency proceedings, as his legal counsel. **See** Order, 7/10/2024. The orphans' court ensured that counsel could represent the Child's best and legal interests without conflict. **See** N.T., 8/15/2024, at 5. As such, we find that the orphans' court fulfilled the mandate of **K.M.G.** and Section 2313(a).

[4] We note that Mother's argument section of her brief improperly addresses the entirety of her issues together without division for each argument. **See** Pa.R.A.P. 2119(a) (requiring, *inter alia*, that "[t]he argument **shall be divided into as many parts as there are questions argued**") (emphasis added).

[5] Attorney Alaskey filed a letter with this Court on behalf of the Child in support of affirming the termination of Mother's parental rights. **See** Letter, *(Footnote Continued Next Page)*

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses

---

11/15/2024. Conversely, we note that OCY did not file a brief or otherwise participate in this appeal.

upon the "eleven enumerated grounds" of parental conduct that may warrant termination. ***See id.*** at 830; ***see also*** 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013); ***see also*** 23 Pa.C.S.A. § 2511(b).

This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). For the following reasons, we conclude that the record supports the orphans' court's finding that the Agency met its burden of proof pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), which provide as follows:[6]

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

---

[6] By analyzing only Section 2511(a)(2), we make no conclusions as to the orphans' court's findings pursuant to Sections 2511(a)(1), (5), and (8). Based on this disposition, we need not review Mother's arguments as to Sections 2511(a)(1), (5), and (8). ***See B.L.W.***, 843 A.2d at 384.

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*. (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). In reviewing the orphans' court's findings pursuant to Section 2511(a)(2), we remain mindful that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

Here, Mother argues that the evidence was insufficient to terminate her parental rights under Section 2511(a)(2). **See** Mother's Brief at 18 (unpaginated). Specifically, Mother claims that the record does not support the orphans' court's finding that she suffered from parental incapacities, neglect, or refusal that cannot or will not be remedied. **See id.** We disagree.

Relevant to this subsection, in its Rule 1925(a) opinion, the orphans' court found as follows:

> Mother has never accepted her need for meaningful substance abuse treatment over a sustained period of time. Mother has denied abusing drugs and/or alcohol or that these substances presented a problem in her parenting. Yet the objective evidence establishes the need for Mother to work [with] a recovery program.
>
> . . .
>
> Mother lacks insight into her parental role in the growth and development of the Child.
>
> . . .
>
> Mother does not accept responsibility for her role in the multiple adjudications of [the Child].
>
> . . .
>
> The harsh reality is that for [approximately nine and one-half] years of the Child's ten years of life, he has lived with and been under the care of someone other than Mother. As of the [involuntary termination] trial, the Child['s case] has been open with OCY for services available to Mother for a combined 50 months.
>
> . . .
>
> Mother, despite ample opportunities, resources, and support, has never been able to meet the Child's basic needs for any meaningful length of time.

Orphans' Court Opinion, 10/1/2024, at 13-14 (footnote omitted).

The record evidence amply supports the orphan's court's findings. We reiterate that the Child was removed from Mother's care due to her repeated requests for his removal. **See** N.T., 8/15/2024, at 16. Most concerningly, Mother admitted that she was aware that the Child, who was eight years old at the time, was "going in our basement and getting high," while he was in her care, yet did nothing to stop him.[7] **Id.** at 51.

The record is clear that Mother has a long history of alcohol abuse, along with street marijuana and cocaine use. **See id.** at 12-13, 33; **see generally** OCY Exhibits 2, 3. Further, Mother refused to acknowledge her addictions throughout the case or that these addictions contributed to Child's two dependency cases. **See id.** at 15, 19, 22, 28, 34, 38, 68, 70, 72-74. In fact, Mother blamed the Child's behaviors, rather than her addictions, for his dependency status. **See id.** at 58, 68, 70, 72-74.

Ms. Franklin testified that, although Mother completed the court-ordered evaluation, Mother denied abusing alcohol and told the evaluator that "OCY is forcing me to be here." **Id.** at 19, 38. Mother's second evaluation recommended that she attend outpatient drug and alcohol treatment with Catholic Charities, which she attended in December of 2023, until approximately June of 2024, when she unilaterally ended treatment. **See id.**

_____

[7] As best we can discern, this occurred around the time period where the Child was smoking a vape pen in school in December of 2022, and before he was adjudicated dependent in June of 2023. **See** N.T., 8/15/2024, at 14, 16, 51.

- 12 -

at 22, 25, 29, 38; OCY Exhibit 6, 3/4/2024, at 21. There was no evidence that Mother was successfully discharged from the program. *See id.* at 29.

Although Mother attended treatment for six months, Ms. Franklin stated that the Agency "did not know if the sessions were actually positive" and doubted that Mother "internalized information from the sessions," which was corroborated by Mother's testimony denying her alcohol abuse. N.T., 8/15/2024, at 38, 68, 70, 72-74. Significantly, despite Mother's outpatient treatment and use of Vivitrol for medication assistance, Mother consistently tested positive for alcohol, including during the times she was engaged with these services. *See id.* at 22, 24-26, 28; OCY Exhibit 8. Ms. Franklin testified that, despite having ceased reunification services with Mother, OCY was still providing them with respect to the dependency of the Child's brother, and Mother continued to test positive for alcohol through the time of the termination hearing. *See id.* at 29.

Ms. Franklin further testified to a specific incident where she personally observed Mother intoxicated. On November 6, 2023, Ms. Franklin was to provide transportation for Mother and the Child to the bonding assessment. *See id.* at 24. Despite Mother's attempt to cancel, Ms. Franklin arrived as scheduled with the Child in the vehicle. *See id.* When they arrived at Dr. von Korff's office, Ms. Franklin observed Mother stumble out of the vehicle, slurring her words with a cup in her hand that smelled like alcohol. *See id.* at 24-25. Mother denied drinking alcohol at the time when questioned by Ms. Franklin.

*See id.* at 25. Mother testified that she "happened to be smelling like" alcohol but continued to deny drinking before the appointment. *Id.* at 56. Dr. von Korff's report of the incident was as follows:

> Dr. von Korff reported that [] [M]other's behavior was "bizarre" and that her state of mind appeared "altered." Dr. von Korff reported that [Mother]'s speech was "slow, repetitive, arduous, and slightly slurred." Dr. von Korff report[ed] that [Mother] attempted to do "damage control" which was "unconvincing" by discussing her reported history of TBI [traumatic brain injury].
>
> Dr. von Korff reported that the [b]onding [a]ssessment "cast light on her parenting limitations as well as doubt on her state of mind and on the integrity of her efforts to fulfill the requirements of her court order and case plan. She did not demonstrate readiness to provide adequate or appropriate care for [the Child]." Dr. von Korff reported that he is "not very hopeful that [Mother] can right her circumstances. Her presentation at the joint session was very troubling."

OCY Exhibit 6, 12/4/2023, at 24.

In addition, Ms. Franklin testified about her concern that Mother obtains marijuana illegally on the street, rather than at a dispensary through her medical card. *See* N.T., 8/15/2024, at 43. Mother acknowledged that she purchases marijuana from "the street," which she attempted to explain was related to her positive test in July of 2024, for cocaine. *See id.* at 67, 75.

Additionally, Mother never progressed past supervised visitation. Mother "attended two of her visits with a strong smell of marijuana on her." OCY Exhibit 6, 3/4/2024, at 18. Ms. Franklin recounted a visit on February 1, 2024, where Mother was actively high on marijuana, as she smelled like the

substance, had red eyes, moved slowly, and was inattentive. *See* N.T., 8/15/2024, at 24. Consequently, OCY ended the visit early. *See id.*

Regarding Mother's mental health and anger issues, Ms. Franklin testified that Mother was engaged with Stairways Behavioral Health for treatment at the time of the hearing. *See id.* at 29. However, there was no evidence presented as to whether Mother was receiving treatment for her specific diagnoses or what progress, if any, she had made during treatment. Further, on her intake assessment, Mother reported that "I don't think I need therapy. I am being forced to be here." OCY Exhibit 6, 3/4/2024, at 21. At the subject proceeding, Mother denied having mental health issues, and that the only disturbance to her mental health is the Agency's involvement with her life. *See* N.T., 8/15/2024, at 55.

In his psychological evaluation of Mother, Dr. von Korff made the following recommendations for Mother: complete a psychiatric evaluation; participate in attachment-oriented psychotherapy; and participate in parent-child counseling. *See* OCY Exhibit 9, at 3, 13. Dr. von Korff suggested Affinity Counseling Services as the specific provider for the services. *See id.* at 13. Ms. Franklin stated that although there was a specific provider recommended, Mother never reached out to them to participate in the services, and therefore never complied with the recommendations. *See* N.T., 8/15/2024, at 42-43.

Ms. Franklin testified that while Mother did participate in anger management at Wagner Behavioral Health beginning in August of 2023, she

was discharged due to failure to appear at classes in February of 2024. *See id.* at 27-28, 36; OCY Exhibit 6, 6/10/2024, at 16. Like the denial of her mental health issues, Mother stated that she does not have anger issues besides her anger "geared towards OCY." *Id.* at 55. Mother testified that this was the focus of her anger management sessions. *See id.* She further admitted that the sessions were "not beneficial" and that they "did not help" her. *Id.* at 56.

Based on the foregoing, the record demonstrates that Mother's repeated and continued incapacities resulting from her drug and alcohol addictions, mental health, and anger problems, (all of which she refused to acknowledge and make progress with despite fourteen months of reunification services), have caused the Child to be without essential parental care, control, or subsistence. *See A.H.*, 247 A.3d at 443. Further, the record undoubtedly supports that Mother's incapacities and refusal cannot or will not be remedied, as she has not successfully remedied them in over ten years and two dependency cases. *See id.* Therefore, we discern no abuse of discretion in the orphans' court's determination that termination of Mother's parental rights was warranted pursuant to Section 2511(a)(2).

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §

2511(b); *see also T.S.M.*, 71 A.3d at 267. A Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has reiterated, "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). The *K.T.* Court described the "severance of a necessary and beneficial relationship [as] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-10 (citing *E.M.*, 620 A.2d at 484 (subsequent citations omitted)). In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. Indeed, the Court stated:

> Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children.

*Id.*

Bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. It is within the province of the orphans' court to "consider the totality of the circumstances when performing a needs and welfare analysis." *Id.* We will not disturb such an assessment if the orphans' court's factual findings are supported by the record. *See id.*

Here, Mother argues that the evidence was insufficient to terminate her parental rights pursuant to Section 2511(b). **See** Mother's Brief at 20 (unpaginated). Specifically, she contends that there was conflicting testimony as to whether the Child desired to be adopted. **See id.** The record belies Mother's claim, and therefore, she is not entitled to relief.

In its Rule 1925(a) opinion, the court found that the Child "has found love and a stable home such as he wants to be adopted by [his kinship parent]. It is in the Child's best interests that the requested adoption occur." Orphans' Court Opinion, 10/1/2024, at 15.

The orphans' court's findings are fully supported by clear and convincing record evidence. Indeed, Ms. Franklin testified that the Child expressed a repeated, continuous desire to be adopted by his kinship parent, with whom he had been residing for approximately seven months. **See** N.T., 8/15/2024, at 32, 34-35. Conversely, Mother stated that the Child told her that he wished to reunify with her. **See id.** at 60. We will not disturb the court's credibility findings in favor of Ms. Franklin in this regard. **See id.** at 80; **M.E.**, 283 A.3d at 829-30.

We again highlight that one of the principal reasons the Child was removed from Mother's care was her own requests for his removal. **See id.** at 16. Over the Child's ten years of life, he had only been in Mother's care for a total of eight months. **See id.** at 46. In addition to only attending nine out of approximately forty supervised visits, Ms. Franklin stated that "months of

time" passed where Mother did not attend a single visit with the Child because she chose not to attend.[8] *See id.* at 44. The few visits Mother did attend were of low quality. For example, Mother was "high" at one visit, and at every other visit Mother discussed with the Child "what the Agency is doing wrong; blaming the [Child and his older brother] for the situation they were in." *Id.* at 23-24.

Moreover, Ms. Franklin described one specific occasion when OCY told the Child that he would be having a visit with Mother. *See id.* at 44. After being told about the upcoming visit, the Child "got in an altercation with a kid. He didn't want to go. He didn't want to get yelled at. And so, he was getting in trouble." *Id.* Ms. Franklin stated that the Child has not asked about Mother since his birthday about three weeks prior to the hearing. *See id.* at 32. The Child, through his kinship parent, invited Mother to his birthday party, but she declined to attend because the Child "doesn't call her." *Id.* at 32, 70-71.

With respect to the impact of termination, Ms. Franklin testified that the Child would not suffer from any detrimental impact or severe emotional harm from termination. *See id.* at 34. Based on the foregoing, there is no evidence

_____

[8] Ms. Franklin testified that when Mother was upset with OCY, she would refuse to attend visits until the next court date. *See* N.T., 8/15/2024, at 21. Ms. Franklin continued that Mother would demand a "*quid quo pro*" with the Agency – if they provided her with housing, then she would attend the supervised visitation with the Child. *Id.* (italicization added).

in this record that a "necessary and beneficial bond" exists between the Child and Mother. ***See K.T.***, 296 A.3d at 1109-10.

In addition, the orphans' court considered the required intangibles in its Section 2511(b) analysis. ***See*** Orphans' Court Opinion, 10/1/2024, at 2, 14-15. Ms. Franklin testified that the Child "wanted permanency." N.T., 8/15/2024, at 26-27. In the fourteen months he was dependent, the Child had been in two foster placements before his pre-adoptive kinship home. ***See id.*** at 30; OCY Exhibit 6, 3/4/2024, at 6. The Child has a diagnosis of attention deficit hyperactivity disorder, for which he receives medication management and therapy. ***See id.*** at 32. Ms. Franklin reported that the Child is happy and doing well in his kinship parent's home, receives good grades in school, and has not had any major behavioral issues. ***See id.*** at 31-32, 35. According to Ms. Franklin, the Child's kinship parent provides the love, support, safety, and stability that he wants and needs from a parent. ***See id.*** at 34-35. Therefore, we discern no abuse of discretion or error of law by the orphans' court in concluding that the termination of Mother's parental rights would best serve the Child's developmental, physical, and emotional needs and welfare. Thus, we affirm the decree pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>3/21/2025</u>